**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DAN RICHARDSON,**

    **Plaintiff,**

v.                                                   Case No. 8:07-cv-708-T-23TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.[1] Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was fifty-two years of age at the time of his administrative hearing in March 2006. Plaintiff has an Associates of Arts degree. His past relevant work was as a radiology clerk and in sales. Plaintiff applied for disability benefits in August 2003, alleging disability as of May 22, 2003, by reason of back pain and diabetes. The Plaintiff's application was denied originally and on reconsideration.

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

The Plaintiff, at his request, then received a *de novo* hearing via video conference before an Administrative Law Judge ("ALJ"). The Plaintiff was assisted at the hearing by a representative and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that he was last able to work in 2003. At that time, he was working as a radiology clerk and was let go because he was unable to pull and file x-rays as required. Plaintiff claims a debilitating back injury as a result of a motor vehicle accident in December 1999. By his testimony, he was not hospitalized at the time of the accident and returned to work for a period of time after the accident, but he was hospitalized for a laminectomy in May 2002. Again, he was off work for a period of recuperation and then attempted to go back to work in 2003. Upon his return, he was placed in a different job in an effort to accommodate his condition, but he was still unable to handle the necessary duties. During this period, his condition caused him to miss work one to two times per week. Plaintiff testified that he also suffers diabetes and hypertension, both of which are treated with medications. He sees a doctor every three months for his diabetes. He claims some near vision problems, occasional tingling in his legs, and at times pain in his toes, feet, and ankles. Plaintiff was taking Lyrica for his pain at the time of the hearing. As with other pain medications he had taken, the medicine makes him sleepy. By his testimony, after taking the medication he will sleep for several minutes.

Plaintiff testified that during the day, he is constantly moving about, lying down, or sitting up. He awakes at 5:30 a.m., cleans, fixes breakfast, and sees his son off to school. During the day he sits, lies down, or walks about. He watches some television and reads. He

denies doing any cooking, cleaning, or laundry.  Plaintiff testified that he will shop with his wife occasionally.  He goes to bed at about 10:00 p.m. each evening.

Plaintiff claims he can walk for about 100 feet or around the house.  After standing for five to ten minutes, he must sit down because of the pain.  After sitting twenty to thirty minutes, he must stand up and move about.  By his account, he can lift about five to six pounds, and he indicates that bending, stooping, and kneeling are painful.  Any attempts to reach over his head causes pain in his neck and shoulders.  He denies being able to climb stairs.  Although he can pick up small objects, sometimes they fall from his hands.  Plaintiff reiterated that during the day he must move about constantly in order to stay comfortable.  *See* Plaintiff's testimony (R. 268-85).

The ALJ next took testimony from Margaret Preno, a vocational expert ("VE").  Initially Ms. Preno verified her understanding of Plaintiff's past work, both before and after his surgery.  In her opinion, his work prior to surgery involved general and light semi-skilled clerical work.  After his surgery, the work was performed at the sedentary level given the accommodation provided to the Plaintiff.  His various sales jobs were described as sedentary to light exertional work of either a semi-skilled or skilled nature.  The VE then testified upon a hypothetical that assumed an individual of Plaintiff's age, education, and work experience capable of light exertional work with no significant limitations in handling or fingering or significant manipulative, visual, communicative, or environmental limitations, but limited to simple tasks.  With such limitations, the VE opined that such individual could perform work as a hand packer, a cleaner/housekeeper, and a ticket taker.  On questioning by Plaintiff's representative, the VE was asked to assume an individual of Plaintiff's age, education, and

work experience, limited to sedentary work with the need to avoid repetitive movement of the neck and mid/lower back, and with lifting limitations of five to six pounds, and avoiding repetitive bending or twisting, with a sit/stand option and the ability to lie down at will. With these limitations, in particular, the last one, the VE opined that the such individual would be eliminated from all competitive employment. Upon further questioning, the VE opined that if the hypothetical proposed by the ALJ also assumed that such person would miss work one day of work per week secondary to his pain, such person would be unemployable due to excessive absenteeism. (R. 286-93).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of May 19, 2006, the ALJ determined that while Plaintiff has severe impairments related to a back disorder, type 2 diabetes mellitus, and mood disorder, he nonetheless had the residual functional capacity to perform light exertional work with limitations for only occasional use of stairs, bending, stooping, kneeling, crouching/squatting, and balancing and limited to simple routine tasks. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-22). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises a single claim on this appeal. As stated by the Plaintiff, the ALJ failed to evaluate all of the objective medical evidence resulting in an inaccurate and incomplete evaluation at Step 3 of the sequential evaluation. By this argument, the ALJ failed to consider all the medical evidence supporting that he at least equaled, if not met, a listed impairment.

Plaintiff contends that the ALJ erroneously concluded that the objective criteria of Listing 1.04 was not satisfied because there was no record evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. By his argument, this conclusion was inconsistent with and unsupported by the medical facts. On the contrary, Plaintiff submits that the medical evidence established he underwent an L4-L5 and L5-S1 transforaminal lumbar interbody fusion with posterior lateral fusion in May 2002,[2] and, as confirmed by the ALJ (R. 16), Plaintiff has

---

[2] *See* Operative Report (R. 196-99).

6

since complained of chronic back pain and been treated with physical therapy and pain medication.  Despite this record, Plaintiff urges that the ALJ failed to also discuss and evaluate the objective evidence revealing disc herniation at L3-L4 causing moderate central spinal stenosis (R. 258), and he argues that without evaluation of this disc herniation and spinal stenosis, the ALJ failed in his duty to consider fully the Listings at Step 3 of the evaluation process and a remand for further consideration is necessary.

Beyond this contention, Plaintiff also suggests that his condition equaled, if not met, the criteria of Listing 1.04.  Relying on this MRI in January 2006 as establishing a small to medium size central disc extrusion at L3-L4 causing moderate central spinal stenosis, Plaintiff further urges in relation to 1.04A that he has also demonstrated a reduced range of motion of the lumbar spine and has evidence of a positive straight-leg raising test.  Regarding 1.04B, Plaintiff cites to the ALJ's conclusion that he could perform only occasional postural activities, *see* (R. 288), to satisfy the criteria that he needed to change position more than every two hours as required by that section of the listing.  Regarding 1.04C, Plaintiff urges that the findings of radiating pain in his legs by Dr. Robert Gruber satisfy the necessary showing of pseudoclaudication under that listing. Plaintiff concludes that the objective evidence establishes that at a minimum, his condition equals Listing 1.04 at section A, B, or C and he urges that the case should be reversed for an award of benefits.  (Doc. 13).

In response, the Commissioner maintains the ALJ properly considered the Listings and that Plaintiff has not and cannot establish that he meets or equals Listing 1.04A, B, or C.  By this argument, the claim fails for both lack of medical support for the requisite underlying conditions and lack of proof of sufficient severity.  (Doc. 16).

7

The Listing of Impairments ("Listings") in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the claimant to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a claimant must present specific findings that meet the various tests listed under the applicable listing. Where the claimant claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

Upon careful review, I conclude that Plaintiff is not entitled to relief on this appeal. First, insofar as Plaintiff suggests that the ALJ failed to even consider the MRI report from January 2006 and, for that reason, failed to conduct the proper Step 3 evaluation, a fair reading of the decision reflects otherwise. As indicated from the transcript of the administrative hearing, the MRI evidence at issue was separately identified and admitted into the record at the hearing as Exhibit 11F. *See* (R. 269). This MRI was taken on orders from Dr. Robert D. Gruber, one of

Plaintiff's longtime treating doctors who saw Plaintiff again in January 2006 for new complaints of progressive low back pain and leg pain. (R. 252-57). As the decision reflects, the ALJ fully assessed this doctor's treatment notes. In particular, he expressly cited to and relied upon the notes and clinical findings from this period of treatment. (R. 19). Additionally, the ALJ stated in more general terms that he had considered the evidence of record (R. 18). In these circumstances, I cannot conclude that the ALJ wholly failed to consider the MRI at issue, especially since the decision expressly references Listing 1.04. *See* (R. 17). For this reason and as set forth below, I cannot agree that a remand for further review of this MRI is necessary or appropriate. On the other hand, I agree with Plaintiff that the ALJ's blanket statement that there is no record of lumbar spinal stenosis is facially inconsistent with this MRI. Despite this misstatement, upon my review of the medical record, I find any error harmless as Plaintiff cannot establish that he met or equaled Listing 1.04 at any time pertinent to this review.

Clearly, Plaintiff's proof fell short of establishing that he met the criteria for Listing 1.04[3] at any time since his alleged onset date of May 22, 2003. As medical records reveal,

---

[3] 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
    A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and suppine);
or
    B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
    C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and

Plaintiff underwent decompression lumbar laminectomy, diskectomies, and interbody fusions of the L4-L5, L5-S1 spine in May 2002. Thereafter, he worked until he was let go in May 2003. Prior to surgery, he was treated conservatively by Dr. Gruber. The medical records from the period leading up to the surgery contain a number of MRIs and a CT scan of either the lumbar or cervical spine. *See* (R. 125-26, 127, 131, 132, 148, 151). These reports vary somewhat in their findings.[4] However, when considered as a whole, they do not reveal the requisite spinal conditions of sufficient duration to satisfy any of the variations of Listing 1.04. Thus, I find no clear evidence of nerve root or spinal cord compression or spinal arachnoiditis of sufficient duration to support Listing 1.04A or B, nor the other requisite criteria either. And, apart from the findings of lumbar stenosis, the other requisite criteria for 1.04C simply are not met.

Further, as for the findings of the lumbar spinal stenosis, it is worth noting that the MRI taken just before Plaintiff's surgery revealed degenerative changes and disc bulges at L4-L5 and L5-S1 levels, resulting in bilateral recess and neural foraminal stenosis. While that report also documents stenosis at the L5-S1 level, there is no objective evidence or finding of disc herniation, nerve compression, or arachnoiditis. (R. 125). Significantly, operative notes and post-operative

---

weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[4]For example, the CT scan of the *lumbar* spine in January 2002, revealed stenosis at L3-L4, a fissure, and a tear, but no cord involvement. (R. 127). The MRI of the *cervical* spine in September 2001, revealed degenerative disc disease throughout the *cervical* spine and a herniated nucleus pulposus at C3-C4. (R. 131). However, the report noted that the herniation had regressed and there was not longer any mass effect on the cervical cord when compared with a March 2000 MRI (R. 148). That MRI of the cervical spine had shown mild indentation on the ventral aspect of the cervical cord. (R. 148). An MRI of the *lumbar* spine in September2001, revealed no herniations or cord impingement and was an "essentially stable MRI" when compared with the MRI taken in January 2000. *Compare* (R. 132) *with* R. 151).

treatment notes thereafter reveal the lumbar surgery achieved good results although ultimately, Plaintiff was not relieved of all pain. (R. 193-210, 103-58). In the 2006 MRI at issue, the findings confirm no evidence of a recurrence of spinal stenosis or disc extrusion at the L4-S1 level of the spine. (R. 258). While that MRI revealed new evidence of disc extrusion causing moderate central spinal stenosis at the level of L3-L4, the report makes no finding of actual compromise of a nerve root or the spinal cord, of arachnoiditis, and significantly, no findings of pseudooclaudication necessary to meet the variations of the listing.[5]

Indeed, during the relevant time period under consideration, there is no evidence of the existence of such injury or impairment of sufficient duration and severity to meet Listing 1.04, and Plaintiff has not demonstrated otherwise.

As for his claim that there is medical equivalence of this listing, the claim likewise fails for lack of medical support and findings that his condition is as severe as required. As noted above, to "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson* at 1224; *see also* 20 C.F.R. § 404.1526(a). When a claimant has an impairment described in the Listings but does not exhibit all the findings in the particular listing, the impairment is medically equal to the listing "if [a claimant has] other findings related to [his] impairment that are at least of equal medical significance to the required criteria." *See* 20 C.F.R. § 404.1526(b). Here, even if Plaintiff can claim an impairment described in this listing, of

---

[5]The requisite pseudoclaudication must be demonstrated by imaging and manifested by chronic nonradicular pain and weakness and resulting in an inability to ambulate effectively, as defined in 1.00B2b. As so defined, an inability to ambulate effectively means an "extreme limitation of the ability to walk," "an insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.*

11

sufficient duration, which I have concluded that he cannot, he does not identify such other findings that are of equal medical significance to the required criteria. *Id.*

Thus, for 1.04A, even if Plaintiff had the requisite nerve root compression, it is not enough for medical equivalence that Plaintiff can also demonstrate a limited range of motion in the spine and positive straight-leg raising test,[6] as this Listing also requires "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and suppine.)" Plaintiff makes neither these or equivalent showings. On the contrary, Dr. Gruber's findings indicate that he cannot. *See* (R. 253, 256).

Regarding 1.04B, Plaintiff urges medical equivalence because of an assumption made by the ALJ in a hypothetical to the VE that Plaintiff could do "occasional postural activities." By his argument, this assumption satisfies the criteria that his condition results in "the need for changes in position or posture more than once every two hours." Even assuming this is sufficient to demonstrate equal medical severity, Plaintiff cannot demonstrate the requisite "spinal arachnoiditis confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia . . ." or an equivalent condition in the spine.

Finally, regarding 1.04C, even assuming Plaintiff could prove the requisite spinal stenosis of sufficient duration, there is no further proof of the requisite pseudoclaudication

---

[6]Plaintiff here proffers findings from Drs. Gruber and Kalin. Dr. Gruber does makes a finding of limited range of motion in connection with the objective evidence from the 2006 MRI. *See* (R. 253, 256). The finding of positive straight- leg test raising cited by Plaintiff however was made in 2003, *see* (R. 212), and in fact is contradicted by the later findings by Dr. Gruber made in connection with the 2006 MRI. (R. 253, 256).

"manifested by chronic nonradicular pain and weakness" or its equivalent in Plaintiff's proffer of radiating pain in the lateral aspects of his legs and significantly, no showing of an equivalent condition so severe that Plaintiff cannot "ambulate effectively" as that term is defined in Listing 1.00B2b.[7]

IV.

In conclusion, while I do not seek to diminish the Plaintiff's leg injury, for the foregoing reasons, I conclude that the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that the court affirm the decision. I further recommend that the court direct the Clerk to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 4th day of February 2008.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

---

[7] At best, the cited report form Dr. Gruber demonstrate antalgic, slow, and cautious gait but normal muscle strength and tone and reflexes in the lower extremities. (R. 255); *see also* (R. 253). These findings are hardly the medical equivalent for the requisite inability to walk without assistance.

13

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record